Irby Construction Co. and Liberty Mutual Insurance Company, Insurance Carrier, Appellants, *v.* Workmen's Compensation Appeal Board and Gale Hunsinger, Widow of Leslie Hunsinger, Deceased, Appellees.

Nancy Vaow Hunsinger, Widow of Leslie Hunsinger, Deceased, Appellant, *v.* Workmen's Compensation Appeal Board and Irby Construction Co. and Liberty Mutual Insurance Company, Insurance Carrier, Appellees.

Argued May 8, 1973, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Adrian R. King,* with him *Joseph R. Thompson,* for Irby Construction Co. and Liberty Mutual Insurance Company.

*Ambrose R. Campana,* for Gale Hunsinger.

*Davis R. Hobbs,* for Nancy Vaow Hunsinger.

OPINION BY JUDGE BLATT, August 17, 1973:

On September 15, 1970, Leslie Hunsinger (decedent) died as the result of an accident sustained while employed by the Irby Construction Company (employer). Numerous workmen's compensation claim petitions were thereafter filed seeking benefits for the children

of the decedent. As the matter stands before this Court, the issue is not whether compensation benefits are payable, but to whom they should be paid.

This tangled state of affairs began on November 28, 1959, when the decedent married Shirley Lockard. This marriage produced two children and ended in divorce on January 26, 1962. On February 2, 1962, he married Beverly Place, they had one child, and were divorced on April 10, 1963. On August 31, 1963, the decedent married Nancy Vaow, and this marriage produced one child. The decedent subsequently separated from Nancy Vaow Hunsinger and moved to California, *but they were never divorced.* On December 30, 1967,[1] the decedent went through a marriage ceremony in California with Gale Johnson (claimant) and they had one child, Nichole Anne Hunsinger. In July of 1969 the decedent left California and returned to Pennsylvania, where he remained until his death. The claimant and Nichole were left in California and never saw the decedent again. The decedent occasionally contributed to their support, and the claimant had initiated divorce proceedings.

Each of the decedent's former wives (including the claimant) filed claim petitions on behalf of their respective children, and the referee granted benefits to all of the children for whom claims were made. In deciding on the claimant's petition, the referee found that she had not known the decedent was already married when she "married" him, but that their alleged marriage was bigamous and Nichole, therefore, was illegitimate. He still awarded Nichole compensation, however, because he found that the decedent was in loco parentis to Nichole.

---

[1] Prior to this "marriage" the decedent had fathered another child, admittedly illegitimate. The mother of that child filed no claim here.

The employer appealed to the Workmen's Compensation Appeal Board (Board), and an appeal was also taken to the Board from the referee's decision on her petition by Nancy Vaow Hunsinger on the grounds that the grant to Nichole lessened the benefits paid to her child. The Board consolidated these appeals and affirmed the order of the referee.

The problem herein arises because Nichole has been considered by the referee and the Board to be an illegitimate child.

Section 307 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, 77 P.S. §562, provides, *inter alia*: "Compensation shall be payable under this section to or on account of any child, brother, or sister, only if and while such child, brother, or sister, is under the age of eighteen. . . . If members of the decedent's household at the time of his death, the terms 'child' and 'children' shall include step-children, adopted children and children to whom he stood in loco parentis. . . ." This section has been interpreted by the courts of this Commonwealth to mean that any legitimate child of a decedent is entitled to compensation, regardless of residence with the father or contributions of support from him. But "compensation may be awarded an illegitimate child [only] if there be proof of two coexisting conditions: (a) that the deceased employee stood in loco parentis to such child; and (b) that the child was a member of decedent's household at the time of his death. . . ." *Cairgle v. American Radiator and Standard Sanitary Corporation*, 366 Pa. 249, 255, 77 A. 2d 439, 442 (1951). *See Smrekar v. Jones & Laughlin Steel Corp.*, 137 Pa. Superior Ct. 183, 8 A. 2d 461 (1939); *Balanti v. Stineman Coal & Coke Company*, 131 Pa. Superior Ct. 344, 200 A. 236 (1938).

If Nichole were illegitimate, therefore, we would necessarily have to decide if the referee and the Board

correctly applied the dictates of *Cairgle, supra,* to the situation. Even if we found that they had erred, moreover, we still might be faced with the constitutional problems, in view of *Weber v. Aetna Casualty and Surety Co.,* 406 U.S. 164, 92 S. Ct. 1400 (1972), in differentiating between legitimate and illegitimate children. We need not decide these issues, however, because Nichole is legally a legitimate child of the decedent.

Section 1 of the Act of December 17, 1959, P. L. 1916, 48 P.S. §169.1, provides: "In all cases where a supposed or alleged marriage is contracted, which is absolutely void by reason of one of the parties thereto having a spouse living at the time of the supposed or alleged marriage, or if for any other lawful reason, the said marriage was void or voidable when contracted, all children born to such parties shall be deemed the legitimate children of both parties for all purposes." This section is clearly applicable to the case at hand.

An argument might be made that, because Nichole was born in California and is still domiciled there, her status as to legitimacy should be determined under California law. Even so, however, the result would be the same as under Pennsylvania law. California Civil Code, §4453,[2] provides, *inter alia*: "The issue of a void or voidable marriage is legitimate, and a judgment of nullity does not affect the legitimacy of children conceived or born before the issuance of such judgment."

As a legitimate child, therefore, Nichole stands in the same position in regard to compensation eligibility as do all of the other legitimate children of the decedent.

For the above reasons, therefore, we issue the following

---

[2] This section became effective on January 1, 1970, and served to repeal California Civil Code, §§84 and 85. These latter sections, however, even if effective, would not change the results herein.

## ORDER

Now, August 17, 1973, the claimant's Petition for Reargument or Remand is hereby denied. The order of the Workmen's Compensation Appeal Board is affirmed and the Irby Construction Company or its insurance carrier is directed to pay compensation as follows:

(1) To Gale Johnson Hunsinger, mother and natural guardian for minor child, Nichole Anne Hunsinger, at the rate of $10.80 per week from September 15, 1970 to July 25, 1978 when Debbi Lyn Hunsinger becomes eighteen years of age. Thereafter, at the rate of $12.00 per week until July 10, 1979 when Lauri Ann Hunsinger becomes eighteen years of age. Thereafter, at the rate of $13.67 per week until May 26, 1980, when Pamela Deirdre Hunsinger becomes eighteen years of age. Thereafter, at the rate of $16.50 per week until January 14, 1982, when Sandy Leslie Hunsinger becomes eighteen years of age. Thereafter, at the rate of $25.00 per week until June 23, 1986, when Nichole Anne Hunsinger becomes eighteen years of age. Compensation payments to Gale Johnson Hunsinger shall terminate as of said last date. All deferred payments of compensation shall bear interest at the rate of six per cent per annum from the due date thereof.

(2) To Nancy Vaow Hunsinger, mother and natural guardian for the minor child, Sandy Leslie Hunsinger, at the rate of $10.80 per week beginning September 15, 1970 and continuing to July 25, 1978, when Debbi Lyn Hunsinger reaches the age of eighteen. Thereafter, at the rate of $12.00 per week until July 10, 1979, when Lauri Ann Hunsinger becomes eighteen years of age. Thereafter, at the rate of $13.67 per week until May 26, 1980, when Pamela Deirdre Hunsinger becomes eighteen years of age. Thereafter, at the rate of $16.50 per week until January 14, 1982, when Sandy Leslie Hunsinger becomes eighteen years of age. Compensation payments

to Nancy Vaow Hunsinger shall terminate as of said last date. All deferred payments of compensation shall bear interest at the rate of six per cent per annum from the date due thereof.

President Judge BOWMAN dissents.